IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID TOWNSEND,                    :
    Plaintiff,                      :
                                    :     CIVIL ACTION
    v.                              :
                                    :     NO. 19-1023
CITY OF CHESTER, *et al.*,          :
    Defendants.                     :

## MEMORANDUM OPINION

Goldberg, J.                                                    July 29, 2020

Plaintiff David Townsend, acting *pro se*, brings claims, pursuant to 42 U.S.C. § 1983 and under state law, stemming from an allegedly unlawful search and arrest by Defendant Officer Bradley Waltman of the Chester Police Department. Officer Waltman and additional Defendant the City of Chester each move to dismiss the Complaint. For the following reasons, I will grant the City of Chester's Motion to Dismiss in its entirety, grant in part and deny in part Officer Waltman's Motion to Dismiss, and grant Plaintiff leave to file an amended complaint as to certain of the dismissed claims.

## I.   FACTUAL BACKGROUND

### A.   Facts in the Complaint

The Complaint sets forth the following facts: [1]

- On August 8, 2017, Plaintiff, an African-American male, was conversing with two other African-American males in his Chester, Pennsylvania neighborhood. During that

---

[1] In deciding a motion under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

conversation, Defendant Officer Bradley Waltman, a white male police officer employed by the City of Chester ("City" or "City of Chester") drove up to the men and asked if they had any guns or illegal drugs in their possession.  They replied that they did not and, at Officer Waltman's request, lifted up their shirts so that the officer could view their waistlines.  (Compl. ¶¶ 1–2.)

- Officer Waltman drove away but stopped and drove back to Plaintiff.  The officer then exited his vehicle and started looking into a Chevrolet Impala parked in the area where Plaintiff and his associates stood talking.  (Id. ¶¶ 3–4.)

- Plaintiff walked over to Officer Waltman and asked if anything was wrong.  Officer Waltman questioned Plaintiff about the ownership of the automobile, and Plaintiff told him the owner's identity.  Officer Waltman then asked to search the vehicle.  When Plaintiff denied consent to search, Officer Waltman seized the automobile and had it towed to the police station.  Approximately three hours later, Officer Waltman obtained a search warrant for the automobile and found marijuana and a firearm in the automobile.  (Id. ¶¶ 5–6.)

- Based on the search, Officer Waltman charged Plaintiff with possession of marijuana, possession of a firearm, and other offenses.  Plaintiff was arrested and held in jail awaiting trial for approximately fourteen months.  (Id. ¶ 7.)

- On September 26, 2018, Plaintiff had a jury trial, at which time Officer Waltman testified that he did not know who owned the marijuana and firearm.  After less than twenty minutes of deliberation, the jury acquitted Plaintiff of all charges.  (Id. ¶¶ 8–9.)

Plaintiff now alleges that Officer Waltman initiated the criminal proceedings by falsely claiming, in the Affidavit of Probable Cause, that Plaintiff owned the marijuana and firearm, when in fact Officer Waltman did not know who actually owned these items.  He also claims that Officer

Waltman has a long history of racially profiling young African-American males as criminals.  In addition, Plaintiff asserts that Defendant City of Chester knew and allowed its officers to racially profile young African-American males as criminals and failed to properly train, discipline, and supervise its officers.  (Id. ¶¶ 10–27.)

### B.   Facts from Documents Relied on in the Complaint or of Public Record[2]

#### 1.   Affidavit of Probable Cause and Search Warrant

On August 8, 2017, Officer Waltman requested a search warrant to search for marijuana, drug proceeds, and/or other drug paraphernalia from a white 2000 Chevrolet Impala.  In the Affidavit of Probable Cause, he alleged that members of the Chester Police Department were patrolling the Chester Apartments, an area known for extensive drug activity.  While at the Chester Apartment area, Officer Waltman observed "a group of black males loitering around a white Chevrolet Impala that was backed into a parking space."  As he approached the group one of the men "reached inside of the vehicle and then began to walk away from this vehicle.  The other black males followed him and walked away at this time."  All four windows to the vehicle were rolled down.  (Waltman Mot., Ex. B.)

---

[2]   As a general rule, a district court reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) "may not consider matters extraneous to the pleadings" without converting the motion into one for summary judgment.  In re Burlington Coat Factory Secs. Litg., 114 F.3d 1410, 1426 (3d Cir. 1997).  The rule, however, has three exceptions that permit courts to consider: (1) exhibits attached to the complaint; (2) matters of public record; and/or (3) undisputedly authentic documents integral to or explicitly relied upon in the complaint.  Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

The Affidavit of Probable Cause and Search Warrant, attached as Exhibit B to Officer Waltman's Motion to Dismiss, are both matters of public record and undisputedly authentic documents explicitly relied upon in the Complaint.  The Police Criminal Complaint, attached as Exhibit C to Officer Waltman's Motion, is a matter of public record.  As such, I may consider these documents when ruling on the Motions to Dismiss.  See Shelley v. Wilson, 339 F. App'x 136, 137 (3d Cir. 2009) (noting that the district court properly considered criminal complaint and arrest warrant in deciding a motion to dismiss a false arrest claim).

Officer Waltman exited his unmarked police vehicle and walked around the Chevrolet Impala, at which time he detected the smell of marijuana coming from the vehicle. There was also a bottle of liquor on the driver's seat. Around the same time, Officer Dougherty and his K-9 partner Mickey responded to the scene. Mickey did an open air sniff and signaled that there was illegal contraband in the car. The officers requested a tow truck to tow the Impala pending a search warrant. (Id.)

The Affidavit then states that Plaintiff, who was one of the males seen loitering around this vehicle, walked over to the officers stating, "that's my car, what's the problem." After Officer Waltman explained the current situation, Plaintiff quickly advised that the vehicle belonged to his girlfriend, who lets him drive the vehicle, and he "had it for the day." Plaintiff turned over the keys to the vehicle before it was towed. The officers later learned that the vehicle belonged to an Erin Walls. (Id.)

2.    Criminal Complaint

The Criminal Complaint against Plaintiff charged one count each of (1) person not to possess, use, etc. firearms, in violation of 18 Pa.C.S. § 6105; (2) firearms not to be carried without a license, in violation of 18 Pa.C.S. § 6106(a); (3) receiving stolen property, in violation of 18 Pa.C.S. § 3925; (4) knowingly or intentionally possessing a controlled or counterfeit substance without authorization; and (5) drug possession, small amount. According to the Criminal Complaint, a search of the Impala revealed: a Pennsylvania state ACCESS card belonging to Plaintiff, a social security card belonging to Plaintiff, a piece of mail addressed to Plaintiff, a white Samsung Galaxy S5 cell phone, a silver Samsung Galaxy S8 cell phone, a clear zip lock bag containing seven small clear zip lock bags of marijuana, a knotted clear plastic bag containing

eleven 25 auto bullets, and a black Phoenix Arms .25 cal. A.C.P. Model HP25A firearm containing

eight rounds and one live round in the chamber.  (Def. Waltman's Mot. to Dismiss, Ex. C.)

### C.   **Procedural History**

On March 11, 2019, Plaintiff filed his federal Complaint alleging the following claims

against Officer Waltman:  false arrest, false imprisonment, intentional infliction of emotional

distress, malicious prosecution, libel, slander per se, negligent performance of duties, a selective

enforcement claim under the Fourteenth Amendment, deceitful and fraudulent conduct, violation

of rights under the Pennsylvania Constitution, and violations of the First, Fourth, and Fourteenth

Amendments to the Constitution.  Plaintiff further claims that the City of Chester is liable for

negligent performance of duties, intentional infliction of emotional distress, and violation of the

Fourth, Eighth, and Fourteenth Amendments to the Constitution.

Defendants each filed a Motion to Dismiss.  Plaintiff filed no response.[3]

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of

demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R.

Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  The United

States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions."  Bell Atl. Corp. v. Twombly,

550 U.S. 544, 555 (2007) (quotations omitted).  "[T]hreadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice" and only a complaint that

states a plausible claim for relief survives a motion to dismiss.  Ashcroft v. Iqbal, 556 U.S. 662,

---

[3]      "[M]otions to dismiss should not be granted without an analysis of the merits of the underlying complaint, notwithstanding local rules regarding the granting of unopposed motions." Gary v. Pa. Human Relations Comm'n, 497 F. App'x 223, 226 (3d Cir. 2012).

678–79 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678.  A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  Id. at 679.

The Court of Appeals has detailed a three-step process to determine whether a complaint meets the pleadings standard.  Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014).  First, the court outlines the elements a plaintiff must plead to state a claim for relief.  Id. at 365.  Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth."  Id.  Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'"  Id. (quoting Iqbal, 556 U.S. at 679).  The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. (quoting Iqbal, 556 U.S. at 679).

A pro se complaint should be "held to less stringent standards than formal pleadings drafted by lawyers."  United States ex rel. Walker v. Fayette Cnty., Pa., 599 F.2d 573, 575 (3d Cir. 1979) (citing Haines v. Kerner, 404 U.S. 519, 521 (1972)).  The court must construe the facts stated in the complaint liberally in favor of the plaintiff.  Haines, 404 U.S. at 520.  "Yet there are limits to our procedural flexibility.  For example, pro se litigants still must allege sufficient facts in their complaints to support a claim."  Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).  Thus, even a pro se complaint must conform with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "naked assertions" that are devoid of "factual

6

enhancement." Iqbal, 556 U.S. at 678 (internal quotations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." Id.

## III.   DISCUSSION

### A.   Officer Waltman's Motion to Dismiss

#### 1.   Section 1983 Claims

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. The statute itself does not independently create substantive rights, but rather merely "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." Kopec v. Tate, 361 F.3d 772, 775–76 (3d Cir. 2004); see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002); Bush v. Lancaster City Bureau of Police, No. 07–3172, 2008 WL 3930290, at *3 (E.D. Pa. Aug. 26, 2008). A plaintiff may bring a § 1983 action if he alleges that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. In other words, a plaintiff alleging a § 1983 violation must demonstrate that: (1) the defendants acted under color of [state] law; and (2) their actions deprived [the plaintiff] of rights secured by the Constitution or federal statutes. Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997).

Here, Plaintiff alleges that Officer Waltman, while acting under color of law and under his apparent authority, deprived Plaintiff of his rights, privileges and immunities granted to him as a

citizen of the United States, in particular the First, Fourth, and Fourteenth Amendments of the United States Constitution.

### a. Fourth Amendment False Arrest and False Imprisonment

The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, Ker v. Calif., 374 U.S. 23, 30 (1963), provides in pertinent part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const., amend. IV.  In order to establish a claim under the Fourth Amendment, a plaintiff must show that the actions of the defendant: (1) constituted a "search" or "seizure" within the meaning of the Fourth Amendment, and (2) were "unreasonable" in light of the surrounding circumstances.  Parker v. Wilson, No. 98–3531, 2000 WL 709484, *3 (E.D. Pa. May 30, 2000) (citing Brower v. Cnty. of Inyo, 489 U.S. 593, 595 (1989)).  A seizure is a restraint of liberty by show of force or authority, see Florida v. Bostick, 501 U.S. 429, 434 (1991), and occurs "when a reasonable person in the position of the plaintiff would not feel free to decline a request of a government agent or to terminate an encounter with a government agent."  Brown v. Commonwealth, No. 99–4901, 2000 WL 562743, *4 (E.D. Pa. May 8, 2000).

The Fourth Amendment precludes a police officer from arresting and incarcerating a citizen except upon probable cause. See Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir.1995) (stating that "an arrest based on probable cause could not become the source of a [§ 1983] claim for false imprisonment"); Nimley v. Baerwald, No. 02–7417, 2004 WL 1171733, at *7 (E.D. Pa. May 26, 2004) (stating that, in a § 1983 action, the key element of a cause of action for unlawful arrest is that the law enforcement agent arrested the plaintiff without probable cause).

The United States Supreme Court has characterized probable cause as a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even

usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983).  A

showing of probable cause thus requires "proof of facts and circumstances that would convince a

reasonable, honest individual that the suspected person is guilty of a criminal offense." Lippay v.

Christos, 996 F.2d 1490, 1502 (3d Cir. 1993).  Although probable cause calls for more than mere

suspicion, it does not mandate that the evidence at the time of the arrest be sufficient to prove guilt

beyond a reasonable doubt.  Nimley, 2004 WL 1171733, at *7 (citing Warlick v. Cross, 969 F.2d

303, 306 (7th Cir. 1992); Orsatti v. N.J. State Police, 71 F.3d 480, 482–83 (3d Cir. 1995)).  Indeed,

the ultimate finding of guilt or innocence, or even dismissal of charges arising out of an arrest and

detention has no bearing on whether the arrest was valid.  Pansy v. Preate, 870 F. Supp. 612, 617–

18 (M.D. Pa. 1994) (citing Pierson v. Ray, 386 U.S. 547, 555 (1967)), aff'd, 61 F.3d 896 (3d Cir.

1995).  Rather, "the proper inquiry is . . . whether the arresting officers had probable cause to

believe the person arrested committed the offense."  Molenski v. Ross, No. 09–1111, 2010 WL

2766891, at *4 (E.D. Pa. July 12, 2010) (quotations omitted).  The test is an objective one based

on the facts available to the officers "at the moment of arrest," rather than in hindsight.  Barna v.

City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994).  Furthermore, whether the arresting officer

acts in good faith or in bad faith in effectuating the arrest is irrelevant.  Whren v. United States, 517

U.S. 806, 813–14 (1998).

     Where an arresting officer arrests a person on a valid warrant, however, the proper focus

of the probable cause analysis is more confined, as it is not a reviewing court's role to determine

whether there was sufficient probable cause.  Rather, the court must simply "determine whether

the affidavit provide[d] a sufficient basis for the decision the magistrate judge actually made."

United States v. Jones, 994 F.2d 1051, 1058 (3d Cir. 1993).  Thus, to plead a Fourth Amendment

violation, a plaintiff must make factual allegations sufficient to establish (1) that "the officer, with

at least a reckless disregard for the truth, 'made false statements or omissions that create[d] a falsehood in applying for a warrant,'" and (2) that "those assertions or omissions were 'material, or necessary, to the finding of probable cause." Andrews v. Scuilli, 853 F.3d 690, 697 (3d Cir. 2017) (quotations omitted). An assertion is made with reckless disregard when "the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." Id. at 698 (quotations omitted). Omissions are made with reckless disregard where "an officer withholds a fact in his ken that any reasonable person would have known . . . was the kind of thing the judge would wish to know." Id. (quotations omitted). Where a complaint does not identify a false statement and/or omission that was material or necessary to the finding of probable cause, a court may dismiss a false arrest claim. See, e.g., Lindenbaum v. Erenius, No. 10-295, 2010 WL 2375958, at *7 (E.D. Pa. June 10, 2010) (dismissing false arrest claim on Rule 12(b)(6) motion where affidavit of probable cause contained sufficient information to allow magistrate to determine probable cause and where plaintiff's allegation that officer omitted material facts was refuted by a plain reading of the affidavit itself); Basile v. Twp. of Smith, 752 F. Supp. 2d 643, 658 (W.D. Pa. 2010) (dismissing false arrest claim under Rule 12(b)(6) where plaintiffs did not allege facts to show that the basis provided in arrest warrant is disputed or did not exist); Garcia v. Walton, No. 07-2000, 2008 WL 11498170, at *3–4 (M.D. Pa. May 19, 2008) (dismissing false arrest claims where complaint identified no misstatement or omission in affidavit of probable cause for arrest warrant).

Here, there was no "seizure" of Plaintiff prior to his arrest, [4] and Plaintiff does not assert that the Affidavit of Probable Cause was insufficient to establish probable cause for his arrest.

---

[4]    Plaintiff does not appear to argue that  Officer Waltman's questioning of Plaintiff on the street constituted a "seizure" within the meaning of the Fourth Amendment.  In any event, a brief seizure of an individual by police based on a reasonable suspicion of criminal activity—*i.e.*, an

Rather, he contends that Officer Waltman "falsely claimed in his application for an arrest warrant in the Affidavit of Probable Cause that the marijuana and firearm belonged to the Plaintiff," when at the preliminary hearing and trial, Officer Waltman testified that he actually did not know who owned the marijuana and firearm.  (Compl. ¶ 10.)  Plaintiff further asserts that Officer Waltman "knowingly and deliberately with a reckless disregard for the truth made a false statement and/or omission that created a falsehood" and that "such false statement or omission was material or necessary to the finding of probable cause."  (Id. ¶ 11.)  Plaintiff re-emphasizes that "Officer Waltman knowingly violated the Plaintiff's constitutional rights and state law when he falsely claimed in the Affidavit of Probable cause that the marijuana and firearm belonged to the Plaintiff." (Id. ¶ 14.)

This argument fails on two grounds.  First, the Affidavit of Probable Cause does not reveal that the finding of probable cause was based on any belief that Officer Waltman knew who the owner of the guns and drugs were.  Rather, it focused on possession of the illegal items and stated, in pertinent part:

> On 08/08/2017 at approximately 1940 hrs. members of Chester Police Department Narcotics, Vice, and Intelligence Unit executed a search warrant on a 2000 white Chevrolet Impala Pennsylvania registration [redacted] VIN [redacted] at Chester Police Headquarters.  After searching the vehicle police located and seized the following items:
> - one (1) Pennsylvania state ACCESS card belonging to David Townsend (center console)
> - one (1) Social Security Card belonging to David Devon Townsend (brown wallet in center console)
> - one (1) piece of mail addressed to David Townsend 718 Lamokin street [sic] Chester, PA 19013 (drivers door panel)
> - one (1) white Samsung Galaxy S5 cell phone (next to passenger seat)

---

investigatory detention—is a "narrowly drawn" exception to the probable cause requirement of the Fourth Amendment.  Terry v. Ohio, 392 U.S. 1 (1968). The Supreme Court in Terry held that a police officer may stop an individual reasonably suspected of criminal activity, question him briefly, and perform a limited pat down frisk for weapons.  Id. at 21–22.  No probable cause is necessary.

- one (1) silver Samsung S8 cell phone (center console)
- one (1) clear zip lock bag containing seven (7) small clear zip lock bags of suspected marijuana (7.7 g) (inside fuse box)
- one (1) knotted clear plastic bag containing eleven (11) 25 auto bullets (inside fuse box)
- one (1) black Phoenix arms .25 cal A.C.P model HP25A firearm serial #4272438; containing eight (8) rounds and one (1) live round in chamber (.25 auto) (inside fuse box).

(Def. Waltman's Mot. to Dismiss, Ex. B.)

The Affidavit goes on to confirm that the suspected marijuana tested positive as marijuana, and that a search on the gun's serial number revealed it was stolen.  On this basis, Officer Waltman sought to arrest Plaintiff for (1) person not to possess, use, etc. firearms, in violation of 18 Pa.C.S. § 6105; (2) firearms not to be carried without a license, in violation of 18 Pa.C.S. § 6106(a); (3) receiving stolen property, in violation of 18 Pa.C.S. § 3925; (4) knowingly or intentionally possessing a controlled or counterfeit substance without authorization; and (5) drug possession, small amount.

Nothing in this Affidavit creates any suggestion, either by affirmative misrepresentation or omission, that Officer Waltman knew that Plaintiff was the owner of the drugs or gun.  Rather, the Affidavit simply makes the proper inference that because multiple forms of Plaintiff's identification were found in the car along with the drugs and gun, probable cause existed to believe that Plaintiff possessed of all of the vehicle's contents.  Given that there was no representation or material omission suggesting that Officer Waltman had direct knowledge that these items belonged to Plaintiff, Plaintiff cannot establish—as is required for his false arrest and false imprisonment claims—that that Officer Waltman's knowledge as to the ownership of the items was "material, or necessary, to the finding of probable cause."  Andrews, 853 F.3d at 697.

Second, even if the Affidavit could be construed to suggest that Plaintiff owned the gun found in the car, the statute under which Plaintiff was charged focuses not on "ownership" of the

firearm, but rather "possession," "use," or "control" of the firearm. Specifically, the statute provides that "[a] person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not *possess, use, control,* sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa. Cons. Stat. § 6105(1) (emphasis added). Given that the gun was found in a car together with multiple forms of Plaintiff's identification, probable cause existed that Plaintiff "possessed" the gun.

 Accordingly, this claim must be dismissed.

    *b.  Fourth Amendment Malicious Prosecution*

 Officer Waltman next seeks to dismiss Plaintiff's malicious prosecution claim.

 Although they are related and often asserted together, "a claim of malicious prosecution is a slightly different species of claim from claims of false arrest and imprisonment." Garland v. Bonds, No. 19-1874, 2020 WL 2126330, at *8 (E.D. Pa. May 5, 2020). The elements of a malicious prosecution claim are: (1) defendant commenced a criminal proceeding; (2) the proceeding terminated in plaintiff's favor; (3) defendant "initiated the proceeding without probable cause;" (4) defendant acted maliciously or with a purpose apart from bringing plaintiff to justice; and (5) plaintiff "suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 81–82 (3d Cir. 2007); see also Henderson v. City of Phila., 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012). "Police officers (as opposed to prosecutors) may be liable for malicious prosecution if they 'conceal or misrepresent material facts' to the prosecutor." Thomas v. City of Phila., 290 F. Supp. 3d 371, 379 (E.D. Pa. 2018) (quoting Halsey v. Pfeiffer, 750 F.3d 273, 297 (3d Cir. 2014)). "In particular, an officer

is liable if he 'fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute.'" Thomas, 290 F. Supp. 3d at 379 (quoting Finnemen v. SEPTA, 267 F. Supp. 3d 639, 644 (E.D. Pa. 2017)).

Here, Plaintiff has alleged facts sufficient to establish elements one, two, and five, given that he was allegedly incarcerated pending his criminal trial and was ultimately found not guilty. Moreover, the Complaint pleads that Officer Waltman actions toward Plaintiff were racially motivated, thus establishing factor four.

Thus, the remaining question is whether Plaintiff has plausibly pled element three, *i.e.*, that Officer Waltman initiated the proceeding without probable cause.  Plaintiff again alleges "Officer Waltman falsely claimed in his application for an arrest warrant in the Affidavit of Probable Cause that the marijuana and firearm belonged to the Plaintiff, David Townsend."  (Compl. ¶ 10.) According to Plaintiff, "at the preliminary hearing and trial on the merits, Officer Waltman testified under oath that he actually did not know who the marijuana and firearm belonged to."  (Id.)

As set forth above, the Affidavit of Probable Cause did not claim that the firearm and marijuana belonged to Plaintiff.  Rather, it stated that, following a lawful search of the Chevrolet Impala, the marijuana and firearm were found along with numerous forms of identification for Plaintiff.  I may not now second guess the magistrate judge's finding that that affidavit established probable cause for Plaintiff's arrest on the charge of unlawful "possession" of firearms.  Officer Waltman also did not falsely convey to the prosecutor any belief that he knew the owner of the guns and drugs.  Indeed, Plaintiff's Complaint concedes that, at the preliminary hearing, Officer Waltman testified under oath that he did not affirmatively know who owned the marijuana and

firearm. (Compl. ¶ 10.) Thus, I find that Plaintiff alleges no facts suggesting that Officer Waltman "fail[ed] to disclose exculpatory evidence to prosecutors, ma[d]e false or misleading reports to the prosecutor, omit[ted] material information from the reports, or otherwise interfere[d] with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute.'" Thomas, 290 F. Supp. at 379. In turn, I must conclude that Plaintiff fails to plead a plausible cause of action for malicious prosecution against Officer Waltman.

### c.   Fourteenth Amendment "Selective Enforcement"

To establish a selective-enforcement claim, a plaintiff must demonstrate (1) that he was treated differently from other similarly situated individuals, and (2) "that this selective treatment was based on an 'unjustifiable standard, such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right.'" Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005) (quoting Holder v. City of Allentown, 987 F.2d 188, 197 (3d Cir. 1993)). A viable equal protection claim based on selective enforcement must plausibly suggest that the challenged law enforcement practice had a discriminatory effect and was motivated by a discriminatory purpose. Carrasca v. Pomeroy, 313 F.3d 828, 834 (3d Cir. 2002).

In pleading discriminatory *effect*, the Complaint must contain sufficient facts supporting a reasonable inference that the Plaintiff was a member of a protected class, and that similarly situated persons in an unprotected class were treated differently. Bradley v. United States, 299 F.3d 197, 206 (3d Cir. 2002). "The Plaintiff is not required to identify specific instances where others have been treated differently, particularly where . . . the Plaintiff pleads additional facts supportive of the plausible conclusion that there is a custom, practice or policy of differential treatment in operation." Davila v. N. Reg'l Joint Police Bd., 979 F. Supp. 2d 612, 629–30 (W.D. Pa. 2013), vacated on other grounds, Nos. 13-0070, 14-0070, 2014 WL 3735631 (W.D. Pa. July 28, 2014).

"To properly claim a discriminatory *purpose*, a plaintiff must plead sufficient factual matter to permit a reasonable inference that the defendant acted 'for the purpose of discriminating on account of race,' ethnicity, or national origin." Id. (emphasis added).

Here, Plaintiff sets forth the following allegations in support of his selective enforcement claim:

> 19.    On or about August 8, 2017, Officer Bradley Waltman racially profiled the Plaintiff and his two (2) Afro-American associates as criminals while they were only having a friendly conversation in their neighborhood;
>
> 20.    That Officer Waltman has a long history of racially profiling young Afro-American males as criminals in Chester, Pennsylvania;
>
> 21.    That Officer Waltman does not stop white citizens in Chester, PA and interrogate them as to whether they are in possession of illegal drugs and guns while they are engaged in conversations in their neighborhoods;
>
> 22.    That Officer Waltman discriminated against the Plaintiff and his Afro-American associates based upon their race (Afro-American) to inhibit the exercise of their constitutional rights to freedom of speech, freedom of expression, and freedom of association and it was malicious and in bad faith;
>
> 23.    No reasonable suspicion of criminal activity existed on August 8, 2017 to justify stopping and questioning the Plaintiff and his two (2) associates about crimes.  This encounter violated Terry v. Ohio, 1968;
>
> 24.    That the City of Chester had a custom, policy, and practice of failing to train, supervise, and discipline its police officers which lead to Officer Bradley Waltman violating the Plaintiff's constitutional and statutory rights.
>
> 25.    That the City of Chester allowed its police officers to racially profile young Afro-American males in Chester, Pennsylvania as criminals and to violate their constitutional rights and this lead to Officer Bradley Waltman violating the Plaintiff's constitutional rights when the Plaintiff was racially profiled by Officer Waltman.

(Compl. ¶¶ 19–25.)

At this stage of the litigation, I must take these alleged facts as true.  Although the Fourth Amendment permits an officer to "conduct a brief, investigatory stop when the officer has a reasonable articulable suspicion that criminal activity is afoot," Illinois v. Wardlow, 528 U.S. 119, 123 (2000), the Complaint sets forth a plausible inference Officer Waltman engaged in the investigatory stop of Plaintiff at least in part because of his race.  While Defendant contends that Plaintiff fails to plead other instances in which Officer Waltman did not question white citizens engaged in similar conduct, such specifics are not required at this stage of the litigation. Accordingly, I will deny the Motion to Dismiss this claim.

> ### d.  First Amendment

Plaintiff also brings a § 1983 claim against Officer Waltman based on an alleged violation of his First Amendment rights.  The sole allegation in the Complaint referencing the First Amendment states only that "Officer Waltman discriminated against the Plaintiff and his Afro-American associates based upon their race (Afro-American) to inhibit the exercise of their constitutional rights to freedom of speech, freedom of expression, and freedom of association and it was malicious and in bad faith."  (Compl. ¶ 22.)

Officer Waltman speculates that Plaintiff attempts to set forth a First Amendment retaliation claim.  The Complaint also suggests, however, that Plaintiff may be alleging a claim for interference with his First Amendment rights to associate.

To the extent Plaintiff intends to plead a retaliation claim, the Complaint is deficient.  To set forth a claim for retaliation under the First Amendment, a plaintiff must allege facts to establish (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. See Thomas v. Indep. Twp., 463 F.3d

285, 296 (3d Cir. 2006) (citing <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003)). The Complaint here fails to set forth any of these elements or facts to create a plausible inference that Officer Waltman took adverse action against Plaintiff because of any protected speech or association.

With respect to an interference claim, the Supreme Court has held that the Free Speech Clause of the First Amendment gives rise to an attendant right to associate for the purpose of engaging in collective expression. <u>See</u> <u>Boy Scouts of Am. v. Dale</u>, 530 U.S. 640, 661 (2000). There are two forms of protected relationships: "those involving expressive association and those involving intimate association." <u>A.B. v. Montgomery Area Sch. Dist.</u>, No. 10-484, 2012 WL 3288113, at *4 (M.D. Pa. Aug. 10, 2012) (citing <u>Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh</u>, 229 F.3d 435, 442 (3d Cir. 2000)). Plaintiff, however, does not allege that he and his "associates" were engaging in expressive activity such as taking a stance on an issue of public, political, social, or cultural importance. <u>Pi Lambda Phi</u>, 229 F.3d at 444. Likewise, Plaintiff alleges no facts from which to infer that Officer Waltman's interruption of Plaintiff's conversation with his two "male associates" interfered with his right to intimate association, which protects the closest and most independent of human relationships against state interference. <u>Id.</u> at 441–42.

Absent any plausible basis for a First Amendment claim, I will dismiss this cause of action.

   2.   <u>State Law Claims</u>

      a.   *False Arrest and False Imprisonment*

"[F]alse arrest and false imprisonment are essentially the same claim." <u>Olender v. Twp. of Bensalem</u>, 32 F. Supp. 2d 775, 791 (E.D. Pa.) (citing Pennsylvania cases), <u>aff'd</u>, 202 F.3d 254 (3d Cir. 1999). There are two elements to a claim of false imprisonment under Pennsylvania law: "(1) the detention of another person, and (2) the unlawfulness of such detention." <u>Renk v. City of</u>

Pittsburgh, 641 A.2d 289, 293 (Pa. 1994).  In Pennsylvania, a false arrest is defined as "1) an arrest made without probable cause or 2) an arrest made by a person without privilege to do so."  Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 869 (E.D. Pa. 2000).  False arrest and false imprisonment claims against police officers effectively turn on whether probable cause exists.  Id. at 869–70. Indeed, "Pennsylvania state law false arrest claims and federal constitutional false arrest claims are co-extensive as to both elements of proof and elements of damages."  Id. at 869.

For the same reasons set forth above with respect to Plaintiff's § 1983 false arrest and false imprisonment claims, I will dismiss the state false arrest and false imprisonment claims.

### b. Malicious Prosecution

A common law claim for malicious prosecution almost precisely mirrors the elements of a § 1983 malicious prosecution claim and requires the plaintiff to demonstrate that the defendant "(1) instituted proceedings against the plaintiff, (2) without probable cause, (3) with malice, and (4) that the proceedings were terminated in [the plaintiff's] favor."  Rosembert v. Borough of East Lansdowne, 14 F. Supp. 3d 631, 644–45 (E.D. Pa. 2014); see also Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010).

As I found with respect to the § 1983 claim, Officer Waltman's Affidavit properly satisfies the probable cause standard.  For the same reasons as set forth with respect to the federal claim, I will dismiss this claim.

### b.  Libel and Slander Per Se

In an action for defamation, a plaintiff has burden of proving the defamatory character of the communication, publication by the defendant, its application to the plaintiff, the understanding by the recipient of its defamatory meaning, the understanding by the recipient of it as intended to be applied to the plaintiff, special harm resulting to the plaintiff from its publication, and abuse of

a conditionally privileged occasion.  42 Pa. Cons. Stat. § 8343(a).  Pennsylvania recognizes an exception to the requirement of showing special harm where the words spoken constitute slander *per se*.   Rossi v. Schlarbaum, 600 F. Supp. 2d 650, 663 (E.D. Pa. 2009).  Slander *per se* encompasses statements that impute to the person (1) a criminal offense, (2) a loathsome disease, (3) a matter incompatible with his business, trade, profession, or office, or (4) serious sexual misconduct.  Id. (citing Restatement (Second) of Torts § 570 (1977)).  "While a plaintiff in a slander *per se* action need not make a showing of special damages, he or she must demonstrate general damages caused by the statement."  Synygy, Inc. v. Scott–Levin, Inc., 51 F. Supp. 2d 570, 581 (E.D. Pa. 1999).

The only allegedly defamatory statement that the Complaint attributes to Officer Waltman is the purported statement in the Affidavit of Probable Cause that Plaintiff owned the firearm and marijuana found in the car.  (Compl. ¶¶ 10–14.)  As set forth above, however, that statement appears nowhere in the Affidavit of Probable Cause.  Because the Complaint fails to plausibly plead that Officer Waltman published this alleged defamatory statement anywhere, I will dismiss this claim.[5]

### c.   *Negligent Performance of Duty*

Officer Waltman next seeks to dismiss Plaintiff's claim for "negligent performance of duty."  I find that such a claim is barred under Pennsylvania law.

---

[5]      Alternatively, Officer Waltman argues that he is immune from suit from defamation under the "witness immunity doctrine" based on testimony or testimonial documents offered in the context of the court proceedings.  This doctrine immunizes from suit communications made in connection with judicial proceedings.  LLMD of Michigan, Inc. v. Jackson-Cross Co., 740 A.2d 186, 189 (Pa. 1999).  Officer Waltman, however, cites no cases extending the witness immunity doctrine to statements made by an officer in an affidavit of probable cause.  As I dismiss this claim on other grounds, I need not address the immunity argument.

Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA") states that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa. Cons. Stat. § 8541.  This limitation extends to an employee of a local agency to the extent his acts were within the scope of his office or duties.  Id. § 8545.  Immunity is abrogated for negligent acts falling into one of eight proscribed categories: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals. Id. § 8542(b).

Officer Waltman is an employee of the City of Chester and, therefore, is entitled to the same immunity as the City.  Because none of the alleged negligent acts in the Complaint fall within one of the eight enumerated categories, Officer Waltman is immune from suit for negligent performance of duty.

### d.    Deceitful and Fraudulent Conduct

In connection with the events of this case, Plaintiff also pleads a claim of "deceitful and fraudulent conduct."  To succeed in a fraud cause, a plaintiff must establish the following elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."  Gruenwald v. Adv. Computer Applications, Inc., 730 A.2d 1004, 1014 (Pa. Super. Ct. 1999) (quoting Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994)).

Plaintiff alleges only that Officer Waltman made a false representation in the Affidavit of Probable Cause on which the issuance of the Criminal Complaint was based.  Plaintiff does not assert that he acted in reliance on Officer Waltman's statements and suffered to his detriment.  See Klemow v. Time Inc., 352 A.2d 12, 16 n.17 (Pa. 1976) ("The successful maintenance of a cause of action for fraud includes, inter alia, a showing that the plaintiff acted in reliance on the defendant's misrepresentations."); Debbs v. Chrysler Corp., 810 A.2d 137, 157 (Pa. Super. Ct. 2002) ("In order to prove . . . common-law fraud . . ., the plaintiffs must show that they suffered harm as a result of detrimental reliance . . . .").  Accordingly, I dismiss this claim.

<em>e.     Claims under the Pennsylvania Constitution</em>

Officer Waltman moves to dismiss Plaintiff's claims under the Pennsylvania Constitution. Although the issue has yet to be decided by the Pennsylvania Supreme Court, the Pennsylvania Commonwealth Court has held § 8 of Article I did not embody a private cause of action for monetary damages in an excessive force case.  Jones v. City of Phila., 890 A.2d 1188, 1213–15 (Pa. Cmmw. Ct. 2006). Since Jones, federal courts have consistently held that no private cause of action exists for damages due to Pennsylvania constitutional violations. See, e.g., Dietrich v. Mout Oliver Borough, No. 18-1697, 2020 WL 955351, at *6 (W.D. Pa. Feb. 27, 2020); Weber v. PNC Investments LLC, No. 19-704, 2020 WL 563330, at *14 (W.D. Pa. Feb. 5, 2020); Hall v. Raech, No. 08-5020, 2009 WL 811503, at *6 (E.D. Pa. Mar. 25, 2009); Douris v. Schweiker, 229 F. Supp. 2d 391, 405 (E.D. Pa. 2002).  Moreover, the United States Court of Appeals for the Third Circuit has held that plaintiffs cannot remedy state constitutional harms using § 1983.  Capogrosso v. Sup. Ct. of NJ, 588 F.3d 180, 186 (3d Cir. 2009).  Thus, I will grant Officer Waltman's motion to dismiss the state constitutional claims.

f.      *Intentional Infliction of Emotional Distress*

To state a claim for intentional infliction of emotional distress under Pennsylvania law, a plaintiff must allege that (1) the defendant engaged in "extreme and outrageous" conduct, (2) the "conduct caused [the plaintiff] severe emotional distress," and (3) the defendant "acted intending to cause such distress or with knowledge that such distress was substantially certain to occur." Brown v. Muhlenberg Twp., 269 F.3d 205, 218 (3d Cir. 2001).[6]  Courts have defined "extreme and outrageous" quite narrowly, finding that the conduct must "go beyond all possible bounds of decency, and [] be regarded as atrocious, and utterly intolerable in a civilized community." Reedy v. Evanson, 615 F.3d 197, 231–32 (3d Cir. 2010) (quoting Field v. Philadelphia Elec. Co., 565 A.2d 1170, 1184 (Pa. Super. 1989)).  "Claims of intentional infliction of emotional distress rarely succeed" because of the high standard of proof  Olender v. Twp. of Bensalem, 32 F. Supp. 2d 775, 792 (E.D. Pa. 1999) (quoting Hoy v. Angelone, 720 A.2d 745, 753–54 (Pa. 1998) (further quotations omitted)).

Courts that have upheld claims for intentional infliction of emotional distress in connection with an arrest have done so where the plaintiff was physically injured by the officers, or where the officer's conduct was otherwise exceptionally reprehensible.  Shaffer v. City of Pittsburgh, No. 14-1674, 2015 WL 4878497, at *10 (W.D. Pa. Aug. 14, 2015).  Where, however, a plaintiff alleges intentional infliction of emotional distress simply in connection with an allegedly false arrest and/or prosecution, and where the court founds that the arresting officer had probable cause, a claim of intentional infliction of emotional distress cannot succeed.  See, e.g.,  Olender v. Twp. of Bensalem, 32 F. Supp. 2d 775, 792 (E.D. Pa. 1999) ("Because I have determined that the Detective

_____

[6]      While the Pennsylvania Supreme Court has not definitively determined the viability of an intentional infliction of emotional distress claim,  the Third Circuit has concluded that Pennsylvania law recognizes the tort.  Brown, 269 F.3d at 217–19.

Defendants had probable cause to arrest [plaintiff], his arrest and trial, even though he was found 'not guilty' of the charges against him, do not support a claim for intentional infliction of emotional distress."); Shaffer, 2015 WL 4878497, at *10 ("[B]ecause Defendants had probable cause to arrest Plaintiff, their conduct falls far short of extreme and outrageous behavior."); Dintino v. Echols, 243 F. Supp. 2d 255, 267–68 (E.D. Pa. 2003) (given that officer had probable cause to arrest civilian employee of police department for fraudulent receipt of overtime wages, officer had acted reasonably, even though employee was found not guilty of the charges against her, and therefore, employee did not establish a claim of intentional infliction of emotional distress).

As set forth above, Officer Waltman's Affidavit established probable cause for Plaintiff's arrest on suspicion of illegally possessing marijuana and a firearm.  Given the existence of probable cause, Plaintiff cannot succeed on his claim of intentional infliction of emotional distress, and I will dismiss this claim.

### 3.  Conclusion as to Officer Waltman's Motion to Dismiss

In light of the foregoing, I will deny Officer Waltman's Motion to Dismiss Plaintiff's claim for selective enforcement but grant his motion on all other grounds.

Nonetheless, in a civil rights case, a court must *sua sponte* allow a plaintiff leave to amend his or her complaint unless it would be inequitable or futile to do so.  Phillips v. Cnty of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008); Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Based on the discussion above, it is conceivable that, with the exception of his claims for negligent performance of duty and violation of the Pennsylvania Constitution, Plaintiff could allege sufficient facts to support his § 1983 and state law claims. Therefore, allowing Plaintiff to amend his Complaint as to those claims would not be inequitable or futile.

Accordingly, the dismissal of Plaintiff's claims for negligent performance of duty and violation of the Pennsylvania Constitution will be with prejudice. The dismissal of Plaintiff's claims under § 1983 and his state claims for false arrest, false imprisonment, malicious prosecution, libel and slander per se, deceitful and fraudulent conduct, and intentional infliction of emotional distress will be without prejudice, and Plaintiff shall be granted leave to amend his Complaint with regard to those claims dismissed without prejudice. Although Plaintiff's claim for selective enforcement is not being dismissed, Plaintiff should take care to replead this claim in any Amended Complaint.

**B. City of Chester's Motion to Dismiss**

1. Section 1983 Claims

Plaintiff also brings all of his § 1983 claims against Defendant City of Chester. The standard for alleging such claims against a municipality, however, is different than against an individual defendant. In order to recover against a municipality or municipal corporation under § 1983, a plaintiff must plead that the City itself caused an injury through the implementation of a policy, practice or custom. Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978); Natale v. Camden Cty Corr. Facility, 318 F.3d 575 (3d Cir. 2003). Section 1983 imposes liability on a municipality where, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997) (emphasis in original). The Third Circuit has recognized liability for local governments in three circumstances:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; . . . second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; . . . third, the municipality will be liable if an official with authority has

> ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes.

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005) (internal citations omitted).

A plaintiff must prove that the action in question, conducted pursuant to official municipal policy, caused his/her injury. Connick v. Thompson, 563 U.S. 51, 60–61 (2011). When a plaintiff alleges that a policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Thomas v. Cumberland Cty., 749 F.3d 217, 222 (3d Cir. 2014) (citations omitted). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 61 (citations omitted).

Notably, "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell, 436 U.S. at 691. Thus, in the absence of an underlying violation by the individual state actors, Monell liability cannot stand. Grazier v. City of Phila., 328 F.3d 120, 124 (3d Cir. 2003) (disallowing liability on a failure to train theory where a jury determined that the underlying conduct did not violate a plaintiff's constitutional rights); Clayworth v. Luzerne Cnty., No. 11–254, 2011 WL 6055407, at *7 (M.D. Pa. Dec. 6, 2011) (holding that in the absence of an underlying violation by the individual state actors, Monell liability cannot stand), aff'd, 513 F. App'x 134 (3d Cir. 2013).

Here, Plaintiff seeks to hold Defendant City of Chester liable under a Monell theory for all of the acts committed by Officer Waltman. As set forth in detail above, however, all of the claims against Officer Waltman—except for the claim of selective enforcement—must be dismissed for failure to state a plausible claim for relief. Absent an underlying violation by the individual actor, Monell liability cannot stand against the City of Chester. Grazier, 328 F.3d at 124.

As to the remaining claim of selective enforcement, I must determine whether the Complaint satisfies the standards for pleading Monell liability against the City of Chester.   In Mcternan v. City of York, Pa., 564 F.3d 636 (3d Cir. 2009), the Third Circuit offered guidance as to what constitutes proper pleading of a Monell claim.  The Court remarked that "[t]o satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was."  Id. at 658.  It noted that the complaint in that case, which simply alleged that the plaintiff's rights were violated "due to the City's policy of ignoring First Amendment right[s]," was insufficient.  Id.  "Equally fatal," according to the Third Circuit, was that the complaint's allegations relevant to the Monell claim failed to allege conduct by a municipal decisionmaker.  Id.  Although plaintiff had alleged that New York police officers "periodically" instructed protestors to leave a specific alley, in an alleged violation of their First Amendment rights, the plaintiff did not plead "knowledge of such directives by a municipal decisionmaker, such as the Mayor or Police Chief."  Id. at 658–59.  Accordingly, the Third Circuit affirmed the dismissal of the Monell claim.

Repeatedly, courts within the Third Circuit have dismissed similarly bareboned Monell allegations.  See, e.g., Langford v. Gloucester Twp. Police Dept., No. 16-1023, 2016 WL 7130912, at *6 (D.N.J. Dec. 7, 2016) (dismissing Monell claim where plaintiff alleged only that the township and police department "had policies and procedures of relying on uncorroborated statements, not verifying facts, willfully disregarding the constitutional rights of New Jersey citizens, arresting citiens without probable cause, and failing to investigate cases.  Such allegations fail to identify any particular official statements, ordinances, regulations, or decisions that amount to a policy, and also fails to mention the existence of previous, similar constitutional violations to show a custom."); Jacobs v. Palmer, No. 14-5797, 2015 WL 1033294, at *5–6 (E.D. Pa. Mar. 10, 2015)

(finding that allegations regarding County's failure to train, supervise, discipline, or terminate officers regarding past similar violations of constitutional rights were insufficient to state a <u>Monell</u> claim because the plaintiffs did not specify what exactly the custom or policy was that allegedly caused their injuries, did not identify the relevant municipal decision maker responsible for that policy, and have not alleged facts to show a pattern of similar violations by untrained employees); <u>Collins v. Borough of Trainer</u>, No. 13-7613, 2014 WL 2978312, at *5 (E.D. Pa. July 1, 2014) (finding that complaint only plead conclusory allegations insufficient to state a <u>Monell</u> claim where plaintiff alleged that "Defendants developed and maintained policies, practices, procedures and customs exhibiting deliberate indifference to the Constitutional rights of persons . . . which caused violations of Plaintiff's constitutional and other rights as aforesaid."); <u>Mirra v. Fynes</u>, No. 13-1677, 2014 WL 716692, at *7 (E.D. Pa. Feb. 25, 2014) (dismissing <u>Monell</u> claim finding that plaintiff failed to include sufficiently specific allegations setting forth a Township policy or custom or specific failure to train that led to the alleged violations of his constitutional rights).

The Complaint here is similarly bareboned as to the <u>Monell</u> claim.  It pleads the following:

> [T]he City of Chester was deliberately indifferen[t] to the Plaintiff's constitutional rights when it failed to train, supervise, and discipline its police officers.  The City of Chester had [a] custom, policy, and practice of allowing it[s] police officers to racially profile African-Americans, to falsify Affidavits of Probable Cause, and to charge its citizens without probable cause and fail to supervise and discipline them for their unconstitutional actions or omissions.  (Compl. p. 4.)
> . . .
> 20.     That Officer Waltman has a long history of racially profiling young Afro-American males as criminals in Chester, Pennsylvania. (Compl. ¶ 20.)
> . . .
> 24.     That the City of Chester had a custom, policy, and practice of failing to train, supervise, and discipline its police officers which lead to Officer Bradley Waltman violating the Plaintiff's constitutional and statutory rights. (Compl. ¶ 24.)
> . . .

> 25.     That the City of Chester allowed its police officers to racially
> profile young Afro-American males in Chester, PA as criminals and
> to violate their constitutional rights and this lead to Officer Bradley
> Waltman violating the Plaintiff's constitutional rights when the
> Plaintiff was racially profiled by Officer Waltman.  (Compl. ¶ 25.)
> . . .
> 28.     That the City of Chester was "deliberately indifferent" to the
> U.S. Constitutional rights of its citizens and allowed its police
> officers to violate their constitutional rights as a result of its failure
> to properly train, supervise, and discipline them.  (Compl. ¶ 28.)

Such allegations fail to plead a <u>Monell</u> claim as Plaintiff neither identifies any particular

policy or custom, nor alleges that the policy or custom was approved by a policy maker.  Merely

pleading that the City knew of a need for training and supervision but failed to adequately provide

that training and supervision does not meet the requisite pleadings standards.  Rather, Plaintiff

must indicate in what manner that training or supervision was deficient and how additional training

and supervision would have prevented the harm.  Further, Plaintiff fails to identify the policymaker

or decisionmaker or, alternatively, to plead the existence of any pattern of constitutional violations

that establish that the City knew of and exhibited deliberate indifference towards the alleged racial

profiling by its officers.

Given this sparse pleading, I will dismiss the <u>Monell</u> claim against Defendant City of

Chester.  However, because Plaintiff may be able to add sufficient facts to state a claim, the

dismissal will be without prejudice and with leave to amend.

### 2.   <u>State Law Claims</u>

Defendant City of Chester next seeks to dismiss all of the state law claims against it as

barred by the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa.C.S. § 8541, <u>et seq.</u>

As noted above, Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA") states

that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any

damages on account of any injury to a person or property caused by any act of the local agency or

an employee thereof or any other person." 42 Pa. Cons. Stat. § 8541.  This limitation extends to an employee of a local agency to the extent his acts were within the scope of his office or duties. Id. § 8545.  Immunity is abrogated for negligent acts falling into one of eight proscribed categories: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals. Id. § 8542(b).

Here, none of the state law claims fall within the above exceptions.  Accordingly, these claims shall be dismissed with prejudice.

### 3.  Punitive Damages

Finally, the City of Chester seeks to dismiss Plaintiff's claims for punitive damages against it.  Punitive damages are not available against a municipality under § 1983.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).  Likewise, punitive damages are not available against a municipality under state law.  Feingold v. Se. Pa. Transp. Auth., 488 A.2d 284, 293 (Pa. Super. 1985), aff'd, 512 Pa. 567 (Pa. 1986).  Accordingly, I dismiss Plaintiff's request for punitive damages with prejudice.

### 4.  Conclusion as to City of Chester's Motion to Dismiss

In light of the foregoing, I will dismiss Plaintiff's state law claims against the City of Chester with prejudice, but will dismiss Plaintiff's § 1983 claims against the City of Chester without prejudice.  Plaintiff may file an amended complaint that attempts to plead a plausible Monell theory of liability against the City of Chester.

An appropriate Order follows.